**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Shoua X.,[1]

Petitioner,

v.

Warden, et al.,

Respondents.

Case No. 26-cv-1656 (KMM/LIB)

**REPORT AND RECOMMENDATION**

Pursuant to a referral made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Shoua X.'s Petition for a writ of habeas corpus. [Docket No. 1]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

For the reasons discussed herein, the undersigned recommends that Petitioner Shoua X.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED in part** and **DENIED in part**, as set forth herein; that Respondents be ordered to immediately release Petitioner in Minnesota upon the issuance of any Order adopting the present Report and Recommendation with confirmation of Petitioner's release to be filed with the Court within forty-eight hours of said Order; that Respondents be required to release Petitioner with all his personal effects seized during his arrest, as well as, all identification documents and immigration documentation; and

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.
[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because a hearing on the Petitioner's claim would not aid the Court in its consideration of the present Petition. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983).

that the injunction enjoining and restraining Respondents from removing Petitioner from Minnesota be continued and maintained, as set forth herein.

## I. Background[3]

Petitioner was born in a refugee camp in Thailand to parents of Laotian origin in September 1983. (Petition [Docket No. 1] ¶ 10). Petitioner entered the United States as a refugee with his parents on June 27, 1984. (Robinson Dec. [Docket No. 14] ¶ 4). On January 7, 1987, Petitioner became a lawful permanent resident. (Id. ¶ 5).

Petitioner was later convicted in Minnesota State Court of 3rd Degree Criminal Sexual Conduct and of being a Prohibited Person in Possession of a Firearm. (Id. ¶ 6). On April 14, 2004, Petitioner was released from the Minnesota Correctional Facility in Lino Lakes, Minnesota into the custody of Immigration and Customs Enforcement ("ICE") pursuant to an ICE detainer. (Id. ¶ 7). At that time, Petitioner received a Notice to Appear charging him as removable under the Immigration and Nationality Act. (Id.).

On May 27, 2004, Petitioner filed an Application for Asylum and an Application for Withholding of Removal. (Id. ¶ 8). On June 2, 2004, an Application for Certificate of Citizenship was filed on Petitioner's behalf with United States Citizenship and Immigration Services (USCIS). (Id. ¶ 9). In his Application for Certificate of Citizenship, Petitioner argued that he was eligible for issuance of a certificate of citizenship pursuant to the Child Citizenship Act[4] because

[3] Petitioner and Respondents largely agree on the relevant procedural facts contained in the Petition. To the extent Respondents do not contest specific factual allegations contained in the Petition, those allegations are deemed admitted. See, e.g., Jose A. v. Noem, No. 26-cv-480 (JMB/ECW), 2026 WL 172524, at *1 n.2 (D. Minn. Jan. 22, 2026) (citing Bland v. California Dep't of Corr., 20 F.3d 1469, 1474 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000)); Paula G. v. Bondi, No. 26-cv-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

[4] The Child Citizenship Act provides that a "child born outside the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled: (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization; (2) The child is under the age of eighteen years; (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful

his father became a naturalized United States citizen in 1995, because Petitioner was under the age of eighteen at the time the Child Citizenship Act became effective, and because Petitioner was in his father's legal and physical custody during all relevant times. (See USCIS Decision [Docket No. 13-4]; Petition [Docket No. 1] ¶¶ 11–15).

On June 23, 2004, United States Citizenship and Immigration Services denied Petitioner's Application for Certificate of Citizenship finding that Petitioner did not meet the requirements of the Child Citizenship Act. (USCIS Decision [Docket No. 13-4]). Specifically, USCIS determined that Petitioner was not in his father's physical custody during the relevant time period, and therefore, Petitioner had failed to meet one of the Child Citizenship Act's requirements. (Id.). In reaching this finding, USCIS relied, in part, upon a report of a conversation between an unnamed USCIS officer and Petitioner's father during which Petitioner's father allegedly stated that Petitioner left his father's physical custody to live with Petitioner's sister in Minnesota at fifteen years of age. (Id.).[5]

On June 29, 2004, an immigration judge denied Petitioner's Application for Asylum, denied Petitioner's Application for Withholding of Removal, and ordered Petitioner removed from the United States to Laos. (Order [Docket No. 13-7]). Petitioner reserved the right to appeal that June 29, 2004, decision, but no such appeal was filed. (Robinson Dec. [Docket No. 14] ¶ 11). Petitioner's order of removal became administratively final on July 29, 2004. (Id.).

In 2004, Laos was not accepting repatriated individuals, and ICE was thus unable to effectuate Petitioner's removal. (Id. ¶ 13). Petitioner was therefore released from ICE's custody pursuant to an Order of Supervision on November 4, 2004. (Id.).

admission for permanent residence." Myers v. Bondi, 150 F.4th 984, 987 (8th Cir. 2025) (cleaned up) (citing U.S.C. § 1431(a)).

[5] Petitioner now contests these findings. (See Petitioner's Notice [Docket No. 21]). Specifically, Petitioner contests the truthfulness of his father's statement. (See Id.).

Petitioner was later convicted in Minnesota State Court of Failure to Register as a Predatory Offender. (See Id. ¶ 15). After serving his state sentence for that conviction, Petitioner was returned to ICE's custody on December 10, 2008. (Id. ¶ 16). However, Petitioner was again released under an Order of Supervision on March 13, 2009. (Id. ¶ 17). Since his release in 2009, Petitioner does not appear to have had any further contact with law enforcement until his December 10, 2025, arrest by ICE underlying this action.

On December 10, 2025, ICE officers arrested Petitioner at his residence in St. Paul, Minnesota. (Id. ¶ 18). Thereafter, on December 16, 2025, ICE revoked Petitioner's Order of Supervision. (Id. ¶ 19; Notice of Revocation of Release [Docket No. 14-1]). In relevant part, the Notice of Revocation of Release generically provides as follows:

> On July 29, 2004, you were ordered removed to Laos by an authorized U.S. DHS/DOJ official and you are subject to an administratively final order of removal. On July 10, 2008, [sic] ICE released you from custody on an Order of Supervision. You have not been compliant with the terms of your release. Additionally, due to changes in circumstances, ICE will pursue new efforts to remove you to Laos.

(Id.).

On December 19, 2025, ICE requested travel documents for Petitioner from the Lao People's Democratic Republic, and ICE received the requested travel documents on January 30, 2026, although those travel documents have since expired. (Travel Documents [Docket No. 14-2]; Robinson Dec. [Docket No. 14] ¶ 20).

Petitioner initiated this action on February 26, 2026. (See Petition [Docket No. 1]). As relief, Petitioner seeks his immediate release from detention. (See Id. ¶ 1, 26, Prayer for Relief). On March 5, 2026, the Honorable Katherine M. Menendez, the United States District Court Judge presiding over this action, issued an order temporarily enjoining Respondents from removing Petitioner from Minnesota. (Order [Docket No. 9]).

## II. Discussion

In support of his request for release, Petitioner argues that his release is warranted because he is a United States citizen, and thus, the underlying immigration order of removal purporting to remove him from the United States is void for lack of jurisdiction ("Citizenship Claim"). (See Id.). Petitioner separately argues that he is entitled to release because his December 10, 2025, arrest and detention by ICE violate the Due Process Clause of the Fifth Amendment to the United States Constitution ("Due Process Claim"). (Id. ¶ 24, 25, Prayer for Relief).

### A. Citizenship Claim

Before the Court may consider the merits of Plaintiff's Citizenship Claim, the Court must first ensure that it has the requisite jurisdictional authority to entertain that claim as a part of this matter now before the Court.

Federal Courts have limited jurisdiction and may hear only matters which fall within the jurisdiction of the Federal Courts. Marine Equipment Management Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993). This creates in the federal courts a self-imposed duty to inquire whether the prerequisite of subject matter jurisdiction has been satisfied in every case before them. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented." Gonzalez v. Thaler, 132 S. Ct. 641, 649 (2012) (citing United States v. Cotton, 535 U.S. 625, 630 (2002)). Subject matter jurisdiction can never be waived or forfeited and can be addressed at any time. See Gonzalez, 132 S. Ct. at 649.

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that remedy remains available, District Courts have been vested

with the jurisdictional authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); 28 U.S.C. §§ 2241(a), 2241(c)(3). The District Court's habeas jurisdiction includes the authority to adjudicate habeas challenges to an individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001).[6]

The District Court's habeas authority is, however, not without limits.

Under certain circumstances, Congress may modify or limit the right to habeas review. For example, 8 U.S.C. § 1252(a)(5) provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory) . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an [immigration] order of removal[.]" The Eighth Circuit Court of Appeals has read § 1252(a)(5) as divesting the District Courts of habeas jurisdiction to review final orders of removal. See, e.g., Tostado v. Carlson, 481 F.3d 1012, 1014 (8th Cir. 2007). This divestiture of habeas jurisdiction applies whether a petitioner is making a direct or indirect challenge to a removal order. See Miechkota v. Chertoff, No. 7-cv-105, 2008 WL 686854, at *3–4 (D.N.D. Mar. 10, 2008); Silva v. United States, 866 F.3d 938, 940 (8th Cir. 2017); Herbert L.R. v. Tritten, 421 F. Supp. 3d 688, 692 (D. Minn. 2019); Adow v. Whitaker, No. 18-cv-2793 (DWF/TNL), 2018 WL 6201730, at *3 (D. Minn. Nov. 28, 2018).

"Determining whether a claim is an indirect challenge to a removal order or whether it arises independently 'will turn on the substance of the relief'" sought. Herbert L.R., 421 F. Supp.

[6] "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM), 2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025) (citing Aditya W. H. v. Trump, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); Walker v. Johnston, 312 U.S. 275, 286 (1941)).

3d at 692 (quoting Martinez v. Napolitano, 704 F.3d 620, 622 (9th Cir. 2012)). When the claim, "however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal," review of that claim by the District Court "is prohibited by section 1252(a)(5)." Id. (quoting Martinez, 704 F.3d at 623; see also Silva, 866 F.3d at 940).

In the present case, Petitioner argues that he is entitled to release from detention because he is a United States citizen, and Petitioner now asks this Court to resolve the merits of his claim of United States citizenship in his favor. (See Petition [Docket No. 1]). Petitioner's argument here is two-fold. (See Id.). Petitioner first argues that because he is a United States citizen "the immigration court lacked jurisdiction to order him removed and [thus] the removal order is a nullity." (Id. ¶ 1; see Petitioner's Reply [Docket No. 16] at 1). Petitioner further argues that his detention "under 8 U.S.C. § 1231, the post-removal order detention statute," is unlawful because it applies only to "aliens" subject to a final order of removal and he is neither an "alien" nor subject to any valid final order of removal. (Petition [Docket No. 1] ¶¶ 1, 19–21). Each of these arguments is premised on Petitioner's underlying claim that he is a United States citizen; a claim Petitioner asks this Court to substantiate.

The Court finds that it lacks the requisite habeas jurisdiction to adjudicate Petitioner's Citizenship Claim because that claim is clearly a challenge to the underlying immigration order of removal. "The fact that Plaintiff is not directly challenging the merits of the removal order does not change the outcome." Madrid v. Miller, No. 25-cv-3114, 2025 WL 1531712, at *3 (D. Neb. May 29, 2025) (emphasis removed); see Miechkota, 2008 WL 686854, at *3–4; Silva, 866 F.3d at 940; Herbert L. R., 421 F. Supp. 3d at 692; Adow, 2018 WL 6201730, at *3. It likewise does not change the outcome that Petitioner's claim to United States citizenship was denied by

USCIS rather than the immigration judge who issued Petitioner's order of removal. See Miechkota, 2008 WL 686854, at *3–4.

The Court lacks jurisdiction to adjudicate Petitioner's underlying Citizenship Claim because Petitioner's Citizenship Claim is inextricably intertwined with his underlying order of removal. There is no circumstance in which this Court could find Petitioner to be a United States citizen without nullifying the order of removal. Indeed, Petitioner specifically argues that because he is a United States citizen the order of removal was a "nullity," and he therefore cannot be detained pursuant to any post-removal statute, e.g. 8 U.S.C. § 1231. (See Petition [Docket No. 1] ¶ 1).[7] Because Petitioner's Citizenship Claim is a challenge to his underlying order of removal, this Court lacks the requisite jurisdiction to adjudicate that claim in this matter now before the Court. See 8 U.S.C. § 1252(a)(5).

Petitioner asserts that this Court should find it has the requisite jurisdiction to adjudicate his Citizenship Claim because other "courts have found jurisdiction to review claims to U.S. citizenship in habeas corpus proceedings[.]" (Petitioner's Reply [Docket No. 16] at 2–3) (citing Lopez v. Doe, 681 F. Supp. 3d 472 (E.D. Va. 2003); Flores-Torres v. Mukasey, 548 F.3d 708 (9th Cir. 2008)). However, each of the cases upon which Petitioner relies is materially distinguishable from the present case. Neither Lopez nor Flores-Torres involved a petitioner with a final order of removal, and therefore § 1252(a) did not apply in those cases. See Lopez v. Doe,

[7] This finding is bolstered by the fact that Petitioner's previous Motion for Temporary Restraining Order, [Docket No. 8], specifically sought an Order of this Court enjoining Respondents from executing the order of removal. (See Petitioner's Mem. [Docket No. 8-1]). The Court's finding here is further bolstered by Petitioner's prior filings seeking an evidentiary hearing so he could offer evidence in support of his claim that he is a United States citizen. (See Petitioner's Reply [Docket No. 16] at 11 (requesting additional time to develop evidence in support of his claim to United States citizenship); Petitioner's Notice [Docket No. 21] at 1 (requesting evidentiary hearing and noting that "[s]ince [Petitioner] is a U.S. citizen, the removal order against him was without jurisdiction and a nullity, and his detention is unlawful")).

681 F. Supp. 3d 472 (E.D. Va. 2003); Flores-Torres v. Mukasey, 548 F.3d 708 (9th Cir. 2008).[8] Indeed, the Court in Flores-Torres specifically noted that § 1252(a) did not apply because the petitioner in that case did "not challenge any final order of removal, but challenge[d] his *detention* prior to the issuance of any such order." Flores-Torres, 548 F.3d at 711 (italics in original) (underlining added).[9]

In reaching the conclusion that this Court lacks jurisdiction to adjudicate here the merits of Petitioner's underlying Citizenship Claim, the Court does not seek to minimize the dire circumstances in which Petitioner finds himself. Afterall, if Petitioner is correct in his assertion that he is a United States citizen, then ICE has no removal jurisdiction over him, and he cannot be detained pursuant to any authority authorizing post-removal detention. See Ng Fung Ho v. White, 259 U.S. 276, 284 (1922). And as Judge Menendez previously noted, "the unlawful removal of an American citizen would constitute significant, irreparable harm." (Order [Docket No. 9]). Moreover, Petitioner has a nonfrivolous claim of United States citizenship, and it is beyond dispute that due process requires that any person with a nonfrivolous claim to United States citizenship receive a judicial evaluation of that claim. Gonzalez-Alarcon v. Macias, 884 F.3d 1266, 1276 (10th Cir. 2018) (quoting Agosto v. Immigr. & Naturalization Serv., 436 U.S. 748, 753 (1978)). However, this District Court is not the proper forum for such a judicial evaluation; the only appropriate forum for that judicial determination is the applicable court of appeals, here the Eighth Circuit Court of Appeals.

---

[8] Petitioner incorrectly asserts that the petitioner in each of these cases had a final order of removal. (See Petitioner's Reply [Docket No. 16] at 2–3). The Court in Lopez specifically noted that the petitioner was not subject to a final order of removal. See Lopez, 681 F. Supp. 3d at 478 ("As a result, Petitioner is not facing imminent deportation, and he is not subject to a final order of removal."). The Court in Flores-Torres also specifically noted, and in fact based its rationale upon the fact that, the petitioner there was not subject to any final order of removal. See Flores-Torres, 548 F.3d at 711.

[9] Petitioner also cites to Olopade v. Att'y Gen. of U.S., 565 F. App'x 71 (3d Cir. 2014), but Olopade is equally inapposite to the present case. The Court in Olopade specifically noted that it "need not determine whether the District Court retained habeas jurisdiction to consider" the petitioner's claim to United States citizenship. Olopade, 565 F. App'x at 74.

On the foregoing basis, the undersigned recommends that to the extent Shoua X.'s Petition for a writ of habeas corpus, [Docket No. 1], raises the merits of Petitioner's Citizenship Claim, the Petition be **DENIED without prejudice** due to a lack of jurisdiction.

**B. Due Process**

The recommendation that this Court lacks jurisdiction to adjudicate the merits of Petitioner's underlying Citizenship Claim does not end the Corut's analysis however. Petitioner also argues that he is entitled to release because his December 2025, arrest and detention by ICE violated the Due Process Clause of the Fifth Amendment to the United States Constitution. (Petition [Docket No. 1] ¶ 24, 25, Prayer for Relief). Petitioner argues that he was detained without due process of law and that he continues to be "detained without process or forum to challenge his detention even though he is a U.S. citizen." (Id. ¶ 24).[10]

In the United States, immigration law permits "authorized immigration officials to detain some classes of [individuals] during the course of certain immigration proceedings." Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). For example, 8 U.S.C. § 1231 provides that after an individual is ordered removed from the United States, immigration officials "shall detain the" individual "[d]uring the removal period[.]" 8 U.S.C. § 1231(a)(2)(A). The removal period is a "period of 90 days" and under circumstances like the present case, the removal period "begins on . . . [t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1).

When an individual becomes subject to a final order of removal and the removal period expires without the individual being removed, specific regulations and statutes control the

[10] Notably, Petitioner's Due Process Claim does not argue that Petitioner's due process rights are being violated because he is a U.S. citizen being held in immigration-related detention. (See Id.). Instead, Petitioner's Due Process Claim argues that his due process rights are being violated because he was arrested and is being detained without the ability to challenge his arrest or detention, and one of those challenges just so happens to be his claim to United States citizenship. (See Id.). For all the reasons already discussed above, this is an important distinction. While the Court lacks jurisdiction to adjudicate Petitioner's Citizenship Claim, the Court plainly possesses jurisdiction over Petitioner's claim that his arrest and continued detention by ICE violated his due process rights.

government's ability to detain, release, and revoke the release of the individual. See, e.g., 8 U.S.C. § 1231; 8 C.F.R. §§ 241.4, 241.13. Once such an individual is released from custody pursuant to conditions of supervision, ICE's ability to redetain that individual is constrained by ICE's own regulations, e.g., 8 C.F.R. § 241.4 and § 241.13. If ICE previously determined that there was no significant likelihood of removal of the individual in the reasonably foreseeable future, then § 241.13 applies; otherwise, § 241.4 applies. See 8 C.F.R. §§ 241.13(a), (b)(1), (g).

When an individual is released pursuant to conditions under § 241.13, that release can be revoked on two grounds: (1) violation of the individual's conditions of supervised release or (2) changed circumstances regarding the likelihood of removability of the individual. 8 C.F.R. § 241.13(i). Under the latter, ICE "may revoke an [individual's] release . . . and return the [individual] to custody if, on account of changed circumstances," ICE "determines that there is a significant likelihood that the [individual] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). In either scenario—violation of supervised release or changed circumstances—the regulations require ICE to notify the individual "of the reasons for revocation of his or her release" and to

> conduct an initial informal interview promptly after his or her return to [ICE's] custody to afford the [individual] an opportunity to respond to the reasons for revocation stated in the notification. The [individual] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [sic] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3). It is ICE's burden to demonstrate that "changed circumstances" justify the revocation of release. See, e.g., Roble v. Bondi, 803 F. Supp. 3d 766, 772–73 (D. Minn. 2025); Escalante v. Noem, No. 25-cv-182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 150–51 (D. Mass. 2025).

"The procedures set forth in 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." Bulle v. Wesling, No. 26-cv-19 (JJM/AEM), 2026 WL 183840, at *2 (D.R.I. Jan. 23, 2026) (citing Jimenez v. Cronen, 317 F. Supp. 3d 626, 655 (D. Mass. 2018)). Individuals released pursuant to 8 C.F.R. § 241.13 under conditions of supervision maintain a protected liberty interest in their continued release. See Bulle, 2026 WL 183840, at *2; Villanueva v. Tate, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025) (discussing Zadvydas v. Davis, 533 U.S. 678 (2001); Young v. Harper, 520 U.S. 143 (1997); Morrissey v. Brewer, 408 U.S. 471 (1972)); Pedro O. v. Noem, No. 26-cv-361 (ECT/LIB), 2026 WL 608314, at *3 (D. Minn. Feb. 27, 2026), report and recommendation adopted, 2026 WL 615415 (D. Minn. Mar. 4, 2026). Accordingly, any attempt to redetain an individual who has been released under § 241.13 necessarily implicates the individual's constitutionally protected liberty interests. See Villanueva, 801 F. Supp. 3d at 704. Consequently, "ICE violates a noncitizen's due process rights when the agency re-detains them and fails to comply with these revocation procedures." Bulle, 2026 WL 183840, at *2.

In the present case, the first requirement of § 241.13—that the removal period has expired—is clearly met. As Respondents acknowledge, Petitioner is subject to a removal order dated June 29, 2004. (See Robinson Dec. [Docket No. 14] ¶ 11; Removal Order [Docket No. 13-7]). That removal order became final on July 29, 2004, when Petitioner's time to appeal the removal order expired without Petitioner filing any such appeal. See 8 C.F.R. §§ 1003.38, 1241.1, 1252(a)(1), 1252 (b)(1). Petitioner's removal period thus began on that date, and the removal period expired ninety days later on October 27, 2004. That date has long since passed.

Because the removal period has expired, Petitioner's redetention is subject to the requirements of § 241.13. The record in the present case demonstrates that ICE previously

determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future, and therefore, § 241.13 governs Petitioner's redetention.

The relevant statutory provisions provide that "[b]efore making any recommendation or decision to release a detainee," immigration officials "must conclude," among other things, that "[t]ravel documents for the [individual] are not available or, in the opinion of [ICE], immediate removal, while proper, is otherwise not practicable or not in the public interest." 8 C.F.R. § 241.4(e); see 8 C.F.R. § 241.13(h)(1). This demonstrates that Petitioner's release was based on a decision that there was no significant likelihood of his removal in the reasonably foreseeable future.[11] Under these circumstances, the Court concludes "that ICE must have [necessarily] made a determination that 'there was no significant likelihood of removal in the reasonably foreseeable future'" prior to issuing the Petitioner's March 13, 2009, Order of Supervision. Pedro O., 2026 WL 608314, at *4 (quoting Pham v. Bondi, No. 25-cv-1157, 2025 WL 3477023, at *3 (W.D. Okla. Oct. 30, 2025), report and recommendation adopted, 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025)) (citing Hamidi v. Bondi, No. 25-cv-1205, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025), report and recommendation adopted, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025); Claudio A.A. v. Bondi, No. 26-cv-742 (KMM/LIB), 2026 WL 468232, at *5 (D. Minn. Feb. 12, 2026), report and recommendation adopted, 2026 WL 478347 (D. Minn. Feb. 18, 2026)).

Because ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future and because the removal period has

[11] Moreover, the facts of the present case also demonstrate, and Respondents appear to concede, that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future at the time of Petitioner's release on March 13, 2009. (See Robinson Dec. [Docket No. 14] ¶ 13) (attesting that Petitioner was released "on an Order of Supervision (OSUP) . . . due to Laos not issuing travel documents"). The only country to which Petitioner had been ordered removed is Laos, but at the time of Petitioner's March 13, 2009, release, Laos was not accepting deportees from the United States. See, e.g., Dipraseuth v. Noem, No. 25-cv-3471 JLS (BJW), 2025 WL 3677674, at *1, 3 (S.D. Cal. Dec. 18, 2025); Phouvieng K. v. Andrews, No. 25-cv-1512 (KES/SAB), 2025 WL 3265504, at *2, 6 (E.D. Cal. Nov. 24, 2025); United States v. Phtsadakone, No. 96-cr-616, 2025 WL 3771418, at *1, 3 (W.D. Wash. Dec. 31, 2025).

expired, ICE was required to satisfy the requirements of § 241.13(i) before revoking Petitioner's release. The question before the Court then is whether ICE complied with § 241.13(i).

Here, the record demonstrates that Respondents unequivocally failed to comply with any of § 241.13(i)'s requirements. As an initial matter, there is no indication that any authorized official actually revoked Petitioner's release prior to his arrest on December 10, 2025. Although Petitioner was arrested by ICE and has certainly been detained, Respondents do not offer any evidence, or even allege, that Petitioner's arrest was made pursuant to a prior revocation of his release. In the absence of any evidence that an authorized immigration official "lawfully revoked" Petitioner's release prior to Petitioner's arrest, ICE's arrest and redetention of Petitioner without any other asserted basis for arresting and detaining Petitioner represents a patent violation of Petitioner's due process rights entitling him to habeas relief. See, e.g., Ge Y. v. Noem, No. 26-cv-1700 (KMM/LIB), 2026 WL 800005, at *5 (D. Minn. Mar. 17, 2026) (citing Claudio A.A., 2026 WL 468232, at *5; Pedro O., 2026 WL 608314, at *4), report and recommendation adopted, 2026 WL 803129 (D. Minn. Mar. 23, 2026); Villanueva, 801 F. Supp. 3d at 699–700).

Furthermore, assuming solely for the sake of argument that Petitioner's arrest was the result of an authorized official revoking Petitioner's release under § 241.13(i), Respondents still failed to comply with § 241.13(i)'s requirement that Petitioner be provided with prior notice of revocation. There is simply no indication in the record that Respondents provided Petitioner, prior to his arrest or even during his arrest, with notice of the revocation of his supervised release as required by § 241.13(i)(3). Respondents do not even allege that Petitioner was provided with the required notice prior to his arrest.[12] The complete lack of the required notice prior to

[12] Indeed, Respondents do not specifically assert that Petitioner has ever been provided with a Notice of Revocation. Respondents assert only that ICE revoked Petitioner's supervised release on December 16, 2025, and they provide a

Petitioner's arrest as required by § 241.13(i)(3) represents a violation of Petitioner's due process rights and a sufficient, independent basis upon which to grant habeas relief to Petitioner. See, e.g., Bashir A.O. v. Blanche, No. 26-cv-2426 (JRT/DLM), 2026 WL 1481591, at *4 (D. Minn. May 20, 2026); Tou V. v. Bondi, No. 26-cv-1381 (JMG/DLM), 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026); Yeng X. v. Noem, No. 26-cv-1399 (JMG/ECW), 2026 WL 465220, at *1–2 (D. Minn. Feb. 18, 2026); Pha S. v. Noem, 26-cv-1539 (MJD/ECW), Order [Docket No. 8] at 9 (D. Minn. March 1, 2026); Si T.P. v. Noem, No. 26-cv-1445 (ECT/DJF), 2026 WL 575705, at *4 (D. Minn. Feb. 24, 2026), report and recommendation adopted, 2026 WL 593436 (D. Minn. Mar. 2, 2026); Roble, 803 F. Supp. 3d at 772; Claudio A.A., 2026 WL 468232, at *7; Villanueva, 801 F. Supp. 3d at 699–700; Bulle, 2026 WL 183840, at *6, 8–9; Faysal N. v. Noem, No. 25-cv-4641 (JMB/DLM), 2026 WL 36066, at *5 (D. Minn. Jan. 6, 2026); Sarail A. v. Bondi, 803 F. Supp. 3d 775, 784–85 (D. Minn. 2025).

Even if Respondents had provided the Notice of Revocation of Release (albeit dated after his arrest) to Petitioner before his arrest, that Notice of Revocation of Release itself is unduly vague and fails to meet the substantive requirement of § 241.13(i). To satisfy the substantive requirements of § 241.13(i), Respondents were required to inform Petitioner of the reasons for the revocation of his supervised release so that Petitioner could present evidence and information to rebut Respondents' purported reasons for revocation. In the present case, Respondents not only plainly failed to provide any notice of revocation of release whatsoever prior to Petitioner's

---

copy of a Notice of Revocation of Release dated December 16, 2025, but Respondents do not assert or provide any evidence demonstrating that Petitioner has ever been provided with that Notice of Revocation. (See Robinson Dec. [Docket No. 14] ¶ 19). Moreover, even if Petitioner was provided with a Notice of Revocation on December 16, 2026, six days after his arrest, the post hoc notice of the revocation of an individual's supervised release is insufficient to satisfy the notice requirement of § 241.13(i). See, e.g., Ge Y., 2026 WL 800005, at *5 n. 7 (citing Tou V. v. Bondi, No. 26-cv-1381, 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026); Yeng X. v. Noem, No. 26-cv-1399 (JMG/ECW), 2026 WL 465220, at *1–2 (D. Minn. Feb. 18, 2026); Pha S. v. Noem, 26-cv-1539 (MJD/ECW), Order [Docket No. 8] at 9 (D. Minn. March 1, 2026); Si T.P. v. Noem, No. 26-cv-1445 (ECT/DJF), 2026 WL 575705, at *4 (D. Minn. Feb. 24, 2026), report and recommendation adopted, 2026 WL 593436 (D. Minn. Mar. 2, 2026)).

arrest, the improper Notice subsequently dated six days after his arrest is itself content deficient on its face.

The untimely Notice of Revocation of Release in this case only conclusory asserts that Petitioner has not been compliant with the terms of his supervised release, but it fails to inform Petitioner of how he allegedly violated the terms of his release. Similarly, the Notice of Revocation of Release generically asserts that "due to changed circumstances, ICE will pursue new efforts to remove" Petitioner, but the untimely Notice here too fails to provide Petitioner with any information about those "new efforts" or provide Petitioner with any information regarding the specific alleged "changed circumstances." Generic, vague assertions like those in the untimely Notice of Revocation of Release in the present case are insufficient to satisfy Respondents' statutory requirement to notify Petitioner of the reasons for the revocation of his release. See, e.g., Ge Y., 2026 WL 800005, at *5 (citing Si T.P., 2026 WL 575705, at *4; Raciel Z.P. v. Noem, No. 26-cv-249 (KMM/SGE), 2026 WL 568266, at *4 (D. Minn. Feb. 13, 2026), report and recommendation adopted, 2026 WL 564251 (D. Minn. Feb. 27, 2026); Chou T. v. Noem, No. 26-cv-1432 (SHL/ECW), 2026 WL 607413, at *4 (D. Minn. Feb. 20, 2026), report and recommendation adopted, 2026 WL 613575 (D. Minn. Mar. 4, 2026); Sarail A., 803 F. Supp. 3d at 783–84; Kao Y. v. Noem, 26-cv-1403 (MJD/DLF), Order [Docket No. 13] at 9–10 (D. Minn. Feb. 26, 2026); Ban S. v. Bondi, 25-cv-4750 (PJS/ECW), Report and Recommendation [Docket No. 8] at 7–8 (D. Minn. Jan. 17, 2026) (collecting cases), adopted Order [Docket No. 12] (D. Minn. Jan. 26, 2026)).

As another Court in this District has clearly explained, "Respondents' failure to notify [Petitioner] of the reasons for his revocation is significant because it prevented him from challenging the revocation. [An individual] must be apprised of the specific reasons for revoking

his supervised release so that he can present rebuttal evidence and argument at his informal interview." Si T.P., 2026 WL 575705, at *4 (citing 8 C.F.R. § 241.13(i)(3); Sarail A., 803 F. Supp. 3d at 781).

In the present case, Respondents' failure here is even more significant given Petitioner's nonfrivolous underlying claim that he is a United States citizen. Indeed, there is no dispute that if Petitioner is a United States citizen, then ICE has no authority to detain him or remove him from the United States. The possibility that a United States citizen could be removed to another country by ICE "is an extraordinary situation . . . which carries weighty constitutional questions, as members of the Supreme Court have recognized." Lopez v. Doe, 681 F. Supp. 3d 472, 489 (E.D. Va. 2023) (citing Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 151 (2020) (Breyer, J., concurring); see generally Chin Yow v. United States, 208 U.S. 8, 10–13 (1908) (Holmes, J.)).

Respondents' failure to provide Petitioner with timely and adequate notice of the reasons for his revocation of release as required by § 241.13(i) is a violation of Petitioner's due process rights. Respondents' failure here represents a sufficient, independent basis to grant habeas relief to Petitioner. See, e.g., Ge Y., 2026 WL 800005, at *6 (citing Si T.P., 2026 WL 575705, at *4; Raciel Z.P., 2026 WL 568266, at *4–5; Chou T., 2026 WL 607413, at *4–5; Ban S. v. Bondi, 25-cv-4750 (PJS/ECW), Report and Recommendation [Docket No. 8] at 7–8 (D. Minn. Jan. 17, 2026); Kao Y. v. Noem, 26-cv-1403 (MJD/DLF), Order [Docket No. 13] at 9–11 (D. Minn. Feb. 26, 2026); Sarail A., 803 F. Supp. 3d at 783–84; Loc T. v. Bondi, No. 25-cv-4705 (PJS/DTS), 2026 WL 592072, at *1 (D. Minn. Mar. 3, 2026)).

Respondents' lack of compliance with their own regulations does not end there.

In addition to failing to provide Petitioner with the required timely and adequate notice of the reasons for the revocation of his release, Respondents have wholly failed to demonstrate the existence of any proper grounds for revocation of Petitioner's supervised release at the time of his December 10, 2025, arrest. As noted above, when an individual is released pursuant to §241.13(i), like Petitioner was here, ICE can only revoke that release on two grounds: violation of the conditions of supervised release or changed circumstances. Neither circumstance has been demonstrated here. Respondents do not allege in the present case that Petitioner was anything other than compliant with all conditions of release prior to his December 10, 2025, arrest. Respondents also fail to identify any "changed circumstance" specific to Petitioner which would support a conclusion that, at the time of Petitioner's arrest, there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Respondents' failure to demonstrate a proper factual basis to revoke Petitioner's release under § 241.13(i) at the time of his December 10, 2025, arrest is another violation of Petitioner's due process rights, and Respondents' failure here represents a further sufficient, independent basis to grant habeas relief to Petitioner. See, e.g., Ge Y., 2026 WL 800005, at *7 (citing Claudio A.A., 2026 WL 468232, at *6; Bulle, 2026 WL 183840, at *8; Faysal N., 2026 WL 36066, at *5; Sarail A., 803 F. Supp. 3d at 784–85)); Zhang Haixiang v. Dep't of Homeland Sec., No. 25-cv-1890, 2025 WL 3683126, at *3 (C.D. Cal. Dec. 2, 2025), report and recommendation, 2025 WL 3679184 (C.D. Cal. Dec. 18, 2025).

As observed above, Respondents only subsequently apparently obtained travel documents authorizing Petitioner's repatriation to Laos. However, Respondents' purported acquisition of travel documents does nothing to change the Court's conclusions. First, although Respondents obtained travel documents for Petitioner, those initial documents have since expired, and there is

no indication in the record as to whether Respondents can now obtain new travel documents, or if such documents can be obtained, how long it will take to obtain such new documents.

Second, the purported (but now expired) travel documents obtained only after Petitioner's December 10, 2025, arrest and detention cannot cure Respondents' failure to comply with the due process requirements of § 241.13(i). See, e.g., Tou V., 2026 WL 458195, at *2–4; Chou T., 2026 WL 607413, at *5; Yeng X., 2026 WL 465220, at *1–2; Pha S. v. Noem, 26-cv-1539 (MJD/ECW), Order [Docket No. 8] at 7–9 (D. Minn. March 1, 2026). Respondents may not improperly detain Petitioner and attempt to cure their due process violations by trying to develop a basis for that detention after the fact. Tou V., 2026 WL 458195, at *3. That is simply "not how it works." Id.

In summation, Petitioner has shown that ICE's arrest and redetention of him on December 10, 2025, violated Petitioner's due process rights because the record now before the Court unequivocally demonstrate that ICE wholly failed to comply with its own regulations under § 241.13(i). The constitutional protections of due process require agencies to follow their own federal regulations when detaining or redetaining an individual. See, e.g., Ge Y., 2026 WL 800005, at *7 (citing Sarail A., 803 F. Supp. 3d at 779; Faysal N., 2026 WL 36066, at *3; Zhang Haixiang, 2025 WL 3683126, at *3; Bulle, 2026 WL 183840, at *9; Rondan Jarrett v. Raycraft, No. 26-cv-244, 2026 WL 319044, at *9 (W.D. Mich. Feb. 6, 2026)). "When ICE fails to meet the requirements of § 241.13(i) in revoking an individual's release, the appropriate remedy is the individual's immediate release subject to no conditions beyond those previously imposed in the order effectuating the individual's initial release from ICE custody." See, e.g., Ge Y., 2026 WL 800005, at *7 (collecting cases).

On that basis, the undersigned recommends that to the extent Shoua X.'s Petition for a writ of habeas corpus, [Docket No. 1], raises a Due Process Claim, the Petition be **GRANTED in part**, as set forth herein.[13] More specifically, the undersigned recommends that Respondents be ordered to immediately release Petitioner in Minnesota following the issuance of any Order adopting the present Report and Recommendation.[14] The undersigned further recommends that Respondents be required to confirm Petitioner's release within forty-eight hours of any Order adopting this Report and Recommendation.

## III. Present Temporary Restraining Order

As noted above, the Judge Menendez previously issued an Order enjoining Respondents from removing Petitioner from Minnesota until further Order of the Court. (Order [Docket No. 9]). That Order remains in effect. The continuation of that Order requires discussion here.

The recommendation that Petitioner's Citizenship Claim be dismissed without prejudice based on a lack of subject matter jurisdiction combined with the recommendation that Petitioner be immediately released based on Respondents' violation of his due process rights concludes this Court's consideration of all claims in this action, but in doing so, it creates a procedural quagmire with significant, practical consequences. If this Court possessed the jurisdiction to adjudicate Petitioner's Citizenship Claim, Respondents would continue to be enjoined from

---

[13] For all the reasons discussed herein, § 241.13(i) controls the revocation of Petitioner's release, and Respondents have wholly failed to comply with the requirements of § 241.13(i) which therefore entitles Petitioner to habeas relief. The Court notes, however, that even assuming solely for the sake of argument that the revocation of Petitioner's release was governed by § 241.4, Petitioner would still be entitled to the same habeas relief because Respondents have also wholly failed to comply with the due process requirements of § 241.4. For example, § 241.4(l)(2) requires the revoking official to make an individualized determination as to revocation including the consideration of certain statutory factors before revoking an individual's release, and there is no indication, or even allegation, in the present case that an immigration official made such a finding prior to Petitioner's arrest on December 10, 2025. Similarly, there is no indication that Respondents have complied with § 241.4(l)'s requirement that, upon revocation of release, ICE must initiate a review process with notification to the individual of the process and make a determination as to whether revocation is warranted. In short, Respondents have arrested and redetained Petitioner with a complete lack of due process, and thus, Petitioner is entitled to habeas relief whether his circumstances are analyzed under § 241.4 or § 241.13(i).

[14] It is further recommended that upon Petitioner's release Respondents be ordered to return all of Petitioner's personal property and documentation he had with him at the time he was detained on December 10, 2025.

removing Petitioner from Minnesota pending resolution of Petitioner's Citizenship Claim. In that circumstance, Petitioner would be protected from removal from the United States until he was able to fully adjudicate his claim of United States citizenship. The same would be true if Petitioner was not entitled to release based on his Due Process Claim because the Court could transfer Petitioner's Citizenship Claim to the Eighth Circuit Court of Appeals, and Respondents would continue to be enjoined from removing Petitioner during that time. But if the Court orders Respondents to release Petitioner based on his Due Process Claim and Petitioner's Citizenship Claim is dismissed without prejudice, then Petitioner could be subject to immediate removal from the United States without first being able to raise his present Citizenship Claim in the appropriate forum.

Petitioner's entitlement to relief based on a violation of his due process rights cannot, and should not, be a detriment to his nonfrivolous claim to United States citizenship. As Judge Menendez noted in the Order granting Petitioner's request for a temporary restraining order, "the unlawful removal of an American citizen would constitute significant, irreparable harm." (Order [Docket No. 9]).

For these reasons, the undersigned recommends that the injunction restraining Respondents from removing Petitioner from Minnesota be continued to maintain the present status quo pending resolution of Petitioner's Citizenship Claim in the appropriate forum. See Enrique M. S. v. Andrews, No. 25-cv-1811 (TLN/CSK), 2026 WL 124863, at *1 (E.D. Cal. Jan. 16, 2026) (enjoining respondents from "re-arresting or re-detaining Petitioner pending a determination of his citizenship claim" at the court of appeals "and until his removability has been fully adjudicated"); see generally Maldonado v. Olson, 795 F. Supp. 3d 1134, 1147 (D. Minn. 2025) ("The purpose of a preliminary injunction is to maintain the status quo.") (citing

Tumey v. Mycroft AI, Inc., 27 F.4th 657, 664 (8th Cir. 2022)); Hassan v. Bondi, No. 25-cv-2444 (KKE), 2026 WL 322774, at *3 (W.D. Wash. Feb. 6, 2026) (issuing a temporary restraining order "so as to maintain the status quo until the issues raised in the" habeas petition could "be fully resolved").

However, the undersigned further recommends that the injunction be dissolved if Petitioner fails to file his Citizenship Claim in the appropriate forum within sixty days after judgement is entered in the present habeas action.

**IV. Objection Period**

One last issue merits discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose. This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections. LR 72.2(b)(2). Thus, under normal circumstances a party would be permitted fourteen (14) days in which to file its objections to the present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said object, if it so chooses.

In the present case, however, Petitioner's unlawful detention would be unnecessarily further prolonged by the typical objection period. Put differently, if the parties were permitted

the full objection period, comprised of twenty-eight days, then the habeas relief recommended by the undersigned would be materially diminished.

Therefore, the Court, in its inherent power to manage pending litigation, reduces the time in which any party is permitted to object to the present Report and Recommendation to three (3) business days, and correspondingly, the Court reduces to two (2) business days the time in which any party is permitted to respond to any objection. An objection period of any longer duration would materially and unnecessarily undermine the recommended habeas relief.

## V. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. To the extent Shoua X.'s Petition for a writ of habeas corpus, [Docket No. 1], raises Petitioner's Due Process Claim, the Petition be **GRANTED in part**, as set forth herein;
2. To the extent Shoua X.'s Petition for a writ of habeas corpus, [Docket No. 1], raises Petitioner's Citizenship Claim, the Petition be **DENIED without prejudice** for lack of subject matter jurisdiction;
3. Respondents be required to immediately release, upon an Order adopting the present Report and Recommendation, Petitioner in Minnesota without subjecting him to conditions greater than those specifically imposed in his March 13, 2009, Order of Supervision;
4. Respondents be required to release Petitioner with all his personal effects seized by ICE during his arrest, as well as, all identification documents and immigration documentation;

**5.** Respondents be required to confirm Petitioner's release in Minnesota from custody within forty-eight (48) hours from the date of any Order adopting the present Report and Recommendation;

**6.** Respondents be precluded from redetaining Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances; and

**7.** That the injunction enjoining and restraining Respondents from removing Petitioner from Minnesota be continued and maintained, as set forth herein.

Dated: June 3, 2026

s/Leo I. Brisbois
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE