**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Shoua X.,

              Petitioner,

v.

Warden, Freeborn Adult Detention
Center, et al.,

              Respondents.

Case No. 26-cv-1656 (KMM/LIB)

**ORDER**

---

On June 3, 2026, U.S. Magistrate Judge Leo I. Brisbois issued a Report and Recommendation ("R&R") recommending Petitioner Shoua X.'s Petition for a Writ of Habeas Corpus be granted in part and denied in part and that he be immediately released. (Dkt. 23.) Both Mr. X. and Respondents have objected to the R&R. (Dkts. 27, 28.) After considering the entire record, the Court accepts the R&R as modified, grants the Petition in part, orders Shoua X.'s immediate release, and dissolves the March 5, 2026 Temporary Restraining Order prohibiting Respondents from moving Mr. X. outside of Minnesota.

**BACKGROUND**

Shoua X. is a national of Thailand and a citizen of Laos. (Dkt. 14 ¶ 4.) He came to the United States as a refugee with his parents in 1984, before he became a lawful permanent resident in 1987. (*Id.* ¶¶ 4–5; *see also* Dkt. 1 ¶¶ 1, 10; Dkt. 21-1 at 1.) Mr. X's father became a U.S. citizen in 1995 when Mr. X. was 12 years old. (Dkt. 1 ¶ 11.) A final order of removal was issued for Mr. X. on July 29, 2004; he did not appeal. (Dkt. 14 ¶¶ 11–12.) After being initially detained, he was released on an Order of Supervision

1

("OSUP") on November 4, 2004. (*Id.* ¶ 13.) He was detained again in 2008 as a result of a Minnesota State criminal conviction, but Immigration and Customs Enforcement ("ICE") released him again in 2009 on another OSUP. (*Id.* ¶¶ 15–17.)

On December 10, 2025, ICE agents detained Mr. X. at his residence. (*Id.* ¶ 18.) ICE revoked his OSUP six days later on December 16, 2025. (*Id.* ¶ 19.) Mr. X. is currently detained in the Freeborn County Jail in Albert Lea, Minnesota. (*Id.* ¶ 21.)

Mr. X. filed this Petition on February 26, 2026. (Dkt. 1.) On March 5, 2026, the Court granted his Motion for a Temporary Restraining Order ("TRO"), enjoining his removal from Minnesota until further order of the Court. (Dkt. 9.) Judge Brisbois issued the R&R on June 3, 2026 (Dkt. 23), and both parties filed Objections on February 12, 2026 (Dkts. 27, 28).

## LEGAL STANDARDS

### *Review of an R&R*

The Court reviews de novo any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3). In the absence of objections, the Court reviews the R&R for clear error. *Nur v. Olmsted County*, 563 F. Supp. 3d 946, 949 (D. Minn. 2021) (citing Fed. R. Civ. P. 72(b) and *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam)). District courts "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b); *see also* Fed. R. Civ. P. 72(b)(3).

*Habeas*

A court may issue a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts have authority to grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). That power "includes jurisdiction to hear habeas challenges to immigration-related detention." *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## DISCUSSION

The R&R analyzes two primary arguments advanced by Mr. X. The first is that he is a U.S. citizen through the process enumerated in the Child Citizenship Act of 2000 ("CCA"), Pub. L. No. 106–395, 114 Stat. 1631 (2000) (codified at 8 U.S.C. § 1431), so his final order of removal is invalid ("Citizenship Claim"). Judge Brisbois concluded that such a request was a de facto review of Mr. X.'s final order of removal, which the Court lacked jurisdiction to do, and recommended denying the Petition to that end. (Dkt. 23 at 5–10.) Judge Brisbois nonetheless recommended that the Court continue to enforce the existing TRO to allow Mr. X. time to resolve his Citizenship Claim. (*Id.* at 20–22.) Mr. X. objects to the conclusion that the Court lacks jurisdiction to determine this issue (Dkt. 28), and Respondents object to the preservation of the TRO (Dkt. 27). Mr. X.'s second argument is that Respondents failed to comply with the regulations governing the revocation of his OSUP, invalidating his arrest ("OSUP Claim"). Judge Brisbois agreed, concluding that Respondents did not comply with 8 C.F.R. § 241.13(i)(3) and recommended that Mr. X.

be immediately released. (Dkt. 23 at 10–20.) Respondents object to this conclusion. (Dkt. 27.)

**I.    8 U.S.C. § 241.13(i)**

The Court starts with the OSUP Claim. Under 8 U.S.C. § 241.13(i), the relevant implementing regulation of 8 U.S.C. § 1231, the government has the authority to revoke an OSUP when certain conditions are met. ICE can revoke an OSUP under § 241.13(i) and the noncitizen[1] will be returned to custody if either (1) the noncitizen violates the conditions of his OSUP or (2) "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2). The regulation also sets forth the required revocation procedure:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*Id.* § 241.13(i)(3) (emphasis added). "The procedures set forth in 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Bulle v. Wesling*, No. 26-cv-19 (JJM/AEM), 2026 WL 183840, at *2 (D.R.I. Jan. 23, 2026). It is improper to redetain a noncitizen before their OSUP is revoked. *Sao V. v. Mullin*, No. 26-cv-2520 (ECT/JFD), 2026 WL 1678692, at *3 (D. Minn. June 10, 2026) (concluding that "ICE violated § 241.13(i) by arresting [the

---

[1] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

petitioner] before revoking his release"). Federal agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

Judge Brisbois concluded that Respondents' revocation of Mr. X.'s OSUP failed to comply with the § 241.13(i) because the revocation did not take place until after he had been in custody for six days, because Respondents failed to provide him notice of the revocation, and because it lacked sufficient reasons for the action. (Dkt. 23 at 14–17.) The Court agrees that Respondents' actions did not conform to the rule.

The concerns with Mr. X.'s detention and OSUP revocation process are plentiful. First, Mr. X. was detained before his OSUP was revoked, which is improper. *Sao V.*, 2026 WL 1678692, at *3. Even if it were permissible, the record shows that Respondents did not comply with § 241.13(i)(3). First, the regulation requires ICE to "conduct an initial informal interview *promptly* after [Mr. X.'s] return to [ICE] custody[.]" 8 C.F.R. § 241.13(i)(3) (emphasis added). Even assuming that such an interview did happen upon his revocation on December 16—which is not supported by the record—the Court is skeptical that a delay of six days between his detention and his interview is "prompt[]" as envisioned by the regulation. *Cf. Emilio S.R.G. v. Mullin*, No. 26-cv-2189 (KMM/DLM), 2026 WL 1810416, at *2 (D. Minn. June 24, 2026) (holding that the informal interview held the same day as the arrest and notice of revocation is "prompt[]"); *Faisal Y. v. Mullin*, No. 26-cv-2521 (LMP/ECW), 2026 WL 1557136, at *3 (D. Minn. June 2, 2026) (same).

Another concern is that the notice of revocation provided to Mr. X. appears to be insufficient. Section 241.13(i)(3) requires that Mr. X. "be notified of the reasons for revocation of his or her release." The word "reasons" means the "relevant information that

5

justifies a conclusion," or, specific to this regulation, "facts probative of the likelihood of future removal." *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 781–82 (D. Minn. 2025) (surveying definitions of "reason" and defining the word for purposes of § 241.13(i)(3)). The Notice provides only a paltry explanation, stating: "You have not been compliant with the terms of your release" and that "due to changes in circumstances, ICE will pursue new efforts to remove you to Laos." (Dkt. 14-1 at 1.) The Notice does not explain how he had been noncompliant with his OSUP, what those "changes in circumstances" were, or what "efforts" they were pursuing to remove him. Other courts have found similar conclusory language to provide insufficient notice. *See, e.g.*, *Sarail A.*, 803 F. Supp. 3d at 783–84 (holding that conclusory assertions do not to satisfy § 241.13(i)(3)). So, in another way, Respondents violated their governing regulations.

Due to Respondents' regulatory noncompliance, release of Mr. X. is appropriate. *Sao V.*, 2026 WL 1678692, at *3 ("[C]ourts in this District regularly order release when ICE violates § 241.13(i)'s procedural requirements.") (collecting cases).[2] The Court therefore orders Respondents to release Mr. X. **within 48 hours**.

## II.   Citizenship Claim and TRO

The Court next discusses Mr. X.'s Citizenship Claim. Mr. X. argues that he automatically gained citizenship through the CCA, so the government lacks the authority

---

[2] "Release may be inappropriate when ICE has obtained travel documents after the petition's filing, and where the petitioner has notice of and has responded to the changed circumstances." *Sao V.*, 2026 WL 1678692, at *3. While Respondents include a copy of travel documents issued by Laos for Mr. X. on January 30, 2026, those documents have since expired. (Dkt. 14-2 ("Laissez-Passer for Using as a Passport" dated Jan. 30, 2026 that "has a validity of 90 days from the of issue").)

to deport him. (Dkt. 1 ¶¶ 12–16.) Judge Brisbois concluded that, while Mr. X. has a "nonfrivolous claim of United States citizenship," this Court lacks jurisdiction to make such a determination because his contention is, in essence, an attack on the validity of his final order of removal, which Congress has stripped from federal district courts' authority. (Dkt. 23 at 5–10 (citing, *inter alia*, 8 U.S.C. § 1252(a)(5)).) Nonetheless, Judge Brisbois recommends that the Court maintain its TRO preventing Mr. X.'s removal so he can seek proper relief. (*Id.* at 20–22.) In his Objections, Mr. X. argues that the Court retains jurisdiction over his Citizenship Claim (Dkt. 28), while Respondents argue that the R&R erred in recommending the TRO be continued (Dkt. 27).

Considering the law and the record before it, the Court agrees that it lacks jurisdiction to adjudicate Mr. X.'s Citizenship Claim. Section 1252(a)(5) unambiguously deprives district courts of jurisdiction to review a final order of removal, and under that statute's plain terms, this Court lacks the power to grant the relief Mr. X. seeks. *See Tostado v. Carlson*, 481 F.3d 1012, 1014 (8th Cir. 2007) ("[A] petition for review to the courts of appeal is the exclusive means of review of an administrative order of removal, deportation, or exclusion.") (citing 8 U.S.C. § 1252(a)(5)).[3] Accordingly, the Court concludes that, without jurisdiction, continuing the injunctive relief provided in the TRO would not be an

---

[3] It appears other avenues are or may be available to Mr. X. to receive clarity on his Citizenship Claim. But insofar as that clarity is sought through habeas or by attacking (even indirectly) the validity of his final order of removal, he cannot receive such a resolution here.

appropriate exercise of the Court's authority. Accordingly, the Court accepts the R&R as modified and dissolves the TRO.

Finally, the Court denies Mr. X.'s request for an order precluding his rearrest. Because the basis for his release is the government's noncompliance with its own governing regulations, any future arrest could be lawful if the law is complied with.

### ORDER

Based on the above, **IT IS HEREBY ORDERED THAT**:

1. The Report and Recommendation (Dkt. 23) is **ACCEPTED** as modified herein;

2. Petitioner Shoua X.'s Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED IN PART**;

3. **Within 48 hours of the entry of this Order**, Respondents must release Petitioner with all of his personal property and file a notice on the docket confirming that Petitioner has been timely released; and

4. The Court's Temporary Restraining Order (Dkt. 9) is **DISSOLVED**.

**Let Judgment be entered accordingly**.

Dated: August 6, 2026          *s/Katherine M. Menendez*
                                            Katherine M. Menendez
                                            United States District Judge

8